Good morning and Karni Shigerian for the appellant. May it please the court. Since the briefing was completed a little bit more than a year ago, two cases have come down in California that affect the substance of what's needed to be proven for a public policy violation. Back in February, I believe the 14th, 2013, the Harris v. City of Santa Monica case was decided at 56 Cal 4th, 203, and specifically at page 232, the new standard of a substantial motivating reason or factor was established in California, which digressed from the law of the previous 30 or so years that had reflected the federal standard. Approximately six months later, in August of last year, the Alamo case came down applying the Harris standard to the type of case before you, the public policy violation. In Alamo at 29, I'm sorry, 219 Calop 4th, 466 held that for a public policy violation, all that the illegal motivation or the unethical motivation, whatever it is, be a substantial motivating factor among other factors, specifically rejecting the but for causation analysis that defendants have argued before this court and argued before the trial court on this particular case. I believe the briefs that we've submitted cover all the factual issues. I think there is from those disputes. One thing that wasn't clear, I believe, at least to the trial judge and the trial court in the excerpts of records at pages 110 through 112, it's clear in the record that Mr. Hutto reported to one of the decision makers the illegal embezzlement of his coworker, Ms. Mattern, prior to when he was suspended and prior to when he was terminated. That was overlooked, at least in the trial court's opinion, but it's important because that draws the causal connection, arguable causal connection for what led to his termination. One out of 85,000 employees at Home Depot complained about the plaintiff making this alleged physical threat in the workplace, and that just happened to be the employee that he reported for embezzlement about three weeks earlier in July of 2010. I just don't think that anything is undisputed here or anything is decidable as a matter of law factually. I think there are inferences to be drawn. If there's no further, if there's no questions, I would just reserve my time. Thank you, Counsel. Thank you. Good morning, Your Honors. My name is Rex Heineke with Aiken Gump. I'm here on behalf of the Appellee Home Depot. First, with regard to what opposing counsel had to say, if the court's going to consider these two new cases which have never been briefed, I'd like some response to them since, as described, they've been available for some considerable time and should have been brought to everyone's attention in a 28J letter. Second, I disagree with what opposing counsel says. Are you, Mr. Heineke, familiar with the two cases? I am not, Your Honor. So I'm afraid I'm not in a position to respond as to opposing counsel's argument as to those. All right. Well, we'll notify you afterwards if we need a response. I appreciate that. The second point opposing counsel made is he claims that the record shows that the decision-makers here, that is, the people who made the decision to terminate the plaintiff, knew what went on, that is, knew the prior incident where the plaintiff had complained about Ms. Mattern and said that she had failed to return property that she got a refund for. If you read the excerpts of the record that were just cited by opposing counsel, that's not what it says. What the plaintiff told the investigator, that is, the human resources person, Morales, who did the investigation for Home Depot, the plaintiff simply said, I think Mattern has a reason to lie here because I previously accused her of wrongdoing. But there's no evidence that he ever said what that wrongdoing was to anyone. So there was nothing anyone could have retaliated about, because all they knew was his questioning her motives, nothing about retaliation. Now, let me turn to our arguments. We think, frankly, there's so many reasons that this should be affirmed, that it's not really a case where there's a serious question about affirming the summary judgment. But let me begin with the investigation and what Home Depot knew. What it knew was there were five people president at the time of this incident. First, there was Ms. Mattern, the complainant, who said that the plaintiff here, Mr. Puncher, that was what she told Home Depot's investigator. The second person who was there was Mr. Scott. Mr. Scott confirmed that Mr. Hatto had said he would punch Mattern unless she stopped laughing at him. Now, Mr. Scott also goes on to say he didn't know if this was a joke, maybe it was a joke, but the rest of the people there did not think it was a joke. So he confirmed what Ms. Mattern said. The third person, Ms. Robbins, what she said was she remembered that there was some joking around before the plaintiff came up. The plaintiff asked, why are you laughing at me? He kept asking, why are you laughing at me? And she didn't remember anything else about the conversation. But she didn't say the plaintiff never threatened to hit Ms. Mattern. The plaintiff, when asked by the investigator, would have expected, would have said, no, this never happened, I never threatened her. He didn't say that. What he said was, I just, he just said no recall. He had no recall of doing anything that might be threatening. But he never said to the investigator, I didn't threaten this person. There was a fifth person who wasn't interviewed because he wasn't available when the interviews went on. So what was Home Depot left with? It was left with two people who said, yes, the plaintiff threatened to hit Ms. Mattern. And no denial from the plaintiff that he said that. Just a vague, oh, I don't recall. In those circumstances, I submit that Home Depot had no choice but to enforce its zero tolerance policy for violence and threats of violence, which the plaintiff admits he knew about, and therefore to terminate the plaintiff in this instance because he threatened violence to a co-employee, a lower level employee. That, I think, should bring this case to an end. In addition, the plaintiff has three claims here. The first is retaliation. I respectfully submit that the retaliation idea here simply makes no sense whatsoever. And why do I say that? Well, let's take your typical retaliation case. What is it? The plaintiff goes to the government and or goes to management at the company and says, there's wrongdoing happening here, and let me tell you what it is. And then what does the company do? It fires the plaintiff for doing that. Okay. What happened here when the plaintiff reported what he thought was wrongdoing? The company investigated, and it disciplined Ms. Mattern over this. So what conceivable reason would Home Depot have for retaliating against the plaintiff in these circumstances? They upheld what his complaint was, and they acted on it. Now, they didn't fire her, and that's what the plaintiff thought should be done. They didn't impose as harsh a penalty as he thought. But they upheld his complaint, and they acted on it, and they acted to protect themselves. How can that possibly be a motive for retaliation or a pretext for retaliation? There's nothing to retaliate about. And that seems to me to be the end of the retaliation claim. It simply makes no sense on the facts here because the company had no reason to retaliate. It had upheld the plaintiff's complaint. There are several other reasons to reach the same result. One is on the law in the Rivera case by this court and the American Computer case, public policy is not implicated when the only report is to a private company, and that was the only report here. There was no report to the government. That its internal returns policy was violated, that doesn't serve any public interest, and therefore there's no public interest to be protected here. Third, it is absolutely clear that the people who made the decision to terminate the plaintiff had no knowledge of the reason that the plaintiff had complained about mismanagement. They knew he'd complained. They knew he said she's got a motive not to tell the truth and get me, but they had no information about what the nature of the complaint was. So they couldn't possibly retaliate about it because they didn't know what the complaint was. And fourth, the law is quite clear that we, the employer, don't have to be absolutely right in these circumstances. What we have to do is have a reasonable suspicion. I shouldn't say that. We should honestly believe that the plaintiff engaged in this conduct, and the only evidence is that the three decision-makers honestly believed this based on the investigation I have described. And so for each of those four reasons, I respectfully submit that the retaliation claim should be thrown out. That brings us to the claim about a supposed implied term that the plaintiff would not be terminated except for good cause. The problem with that premise is that the plaintiff's job application said that this was an at-will job. The plaintiff was an assistant manager for Home Depot, and he admits that as part of his job when he was instructing new employees, he told them that their jobs were at will. And the only thing he comes up with is some vague statement to the effect that if you work here and do a good job, you'll have a long career at the company. How long had he been an employee? I think about five years, Your Honor. Okay. So he had been there a while. But he was quite familiar as a result of that time there with exactly how things did, were operated, and how employees were trained and how they were terminated. Now, he says that there was testimony that Home Depot would only fire someone, that he was told they'd only fire them if they had a reason. What Home Depot said was, we record reasons for this. We don't do it arbitrarily. But that doesn't convert into a legal requirement that we must have good cause to terminate someone. The fact that we write it down and the fact that we don't operate arbitrarily and the fact that we have some cause for it doesn't mean that we agreed with every employee that we will not terminate you for good cause. So we don't think there's a contract claim to start with. But if there's a contract claim, I respectfully submit, based on the description of the investigation,  an assistant manager for threatening a low-level employee with violence. That has to be good cause under any version of the law. On the defamation claim, I won't spend much time on that. The fact of the matter is there's no evidence that Home Depot ever told anybody why the plaintiff was terminated. Of course, everybody knew he was terminated because he left. And there's no evidence that the plaintiff ever told other employers the reason he was terminated. In any event, it was true. He was terminated for threatening violence. And under California Civil Code 47.3, the common interest privilege, Home Depot was privileged to tell people why it acted the way it did. For all those reasons, we respectfully submit that Judge Wilson's summary judgment. Thank you. I've lost track of the current California law. But I remember a number of years ago, most of the larger companies changed their practice, and when anyone asked about why the employee had left, they'd say all we can tell you is he was an employee from this date to that date. Is there less of a reason for employers to do that now than when that happened? No, Your Honor, I don't think so. It's simply a litigation avoidance tool. Yes, you do have this common interest privilege. It can be overcome by a showing of malice. There's no evidence of that here. But employers simply don't want to go through that litigation. There's no reason to get into it. But let me step back and say again that in this case, there's no evidence that Home Depot ever told anybody the reason he was terminated. And so there's no basis for a defamation claim in the first instance, because they didn't tell anybody why. Yes, he was terminated, but they didn't say why. But our further points are, had they done that, if they did that, it would have been true that he was terminated. I was really asking largely out of curiosity, is that still the practice? Yes, Your Honor. I think most major employers, at least in California, and I suspect throughout the country, although I couldn't really say that, do not do anything more than confirm, you know, basic facts. This person worked here. This was their job. These were the dates. This was the salary. Nothing else, because they don't want to go through the litigation that follows from that. I mean, I think that's probably a bad situation for everyone and for future employers and so on, but that's what happens when you're in a very litigious state like California. People simply clam up. Too many people claiming their rights in California. Well, Your Honor, nothing wrong with claiming your rights, but at some point you've got to decide how far those rights go. If the Court has any other questions, I would be happy to try and answer them, but otherwise I'm prepared to submit. All right. We will leave the record open until we either notify you or decide the case. Yes, Your Honor. I don't think, frankly, that that issue of the standard for causation is determinative here. In light of the things I said, I don't think the Court has to ever reach, whether it's a but-for test or a substantial factor test. So would you like us to submit it now? Well, no, Your Honor. If the Court disagrees with me and decides in a different way, then I would like to respond to that, but I don't want to take up the Court's time with something that isn't material. Well, it's either submitted or not. Thank you, Your Honor. If I could briefly just touch on a few points. With regards to the law for the implied contract claim, in August of 2000 Justice Baxter wrote the key decision that controls, that's the Goose v. Bechtel decision, and that rejected the argument defendants make here that mere at-will language in either an employee application or actually written policies, as opposed to an integrated written contract, is controlling. As we've laid out in our brief, setting aside even Mr. Haddo's own testimony, defendants testify that it's their actual practice to only terminate for a cause. That's what they actually do. That's one of the four Foley and Goose factors that are followed. But what you'd expect an employer to do, what makes that into a contract? Well, it's one of the, it's an implied contract. So you're urging companies from time to time to arbitrarily fire somebody just to make sure they can preserve an at-will employment relationship? No. What should they do? They should have an integrated contract with their employees if they want to be bound by at-will. I don't think it's in the employer's best interest, and I'm an employer, to have at-will where my employees can just walk off the job at any time they want. Employers rely upon those employees to get their jobs done. But if employers are willing to accept the fact that the employees can walk off at-will, as apparently your client was free to do so under the terms of the employment contract to the extent that there's writing, why should we infer that's been changed because the company doesn't terminate people without a reason? That's a great question. Actually, Home Depot in its written policies states that they expect to get rid of notice before an employee quits. So they don't want employees to quit at-will, actually. Well, that's backwards. They expect to give notice. It doesn't say anything about what expectation they can demand from an employee. Do you have any evidence an employee comes into Home Depot and says, I quit, and Home Depot says in response, you can't? You have to work for the next two weeks because you're not an at-will employee? No, except for their written policies that state that we expect that you're going to give us notice before you quit. I accept your point. I understand. But if an employer really wants to follow at-will, they just have to put it in a written contract, and then the law in California says you can't have some implication to the contrary. There are lots of employment situations where employers do terminate at-will just for no reason, just because there's a shift politically, just because of many other factors. You just don't see it really in the retail sector where employers don't really have that practice, and there's an implication after five years and six months of all good employment. Mr. Hutto has never written up, never alleged to have said anything inappropriate until he reported Ms. Mattern for engaging in embezzlement on the job. Three weeks later, she alleges this alleged threat. Were there four people there? She's the only one that confirms that this threat was made. Ms. Robbins says, I didn't hear it. Even her friend, her close personal friend, Mr. Scott, who she drives back and forth to work with, says it was a jovial, funny conversation, and I didn't hear that threat being made. And Mr. Hutto denied making that threat as well, both in his deposition and previously to Home Depot before he's fired. Home Depot, if they really wanted to look at the events, had video cameras. This was on the floor of their store. They keep those tapes for 60 days or 75 days. I forgot what's in the record. They had that available to them to show what's the demeanor like when this interaction occurred. Was it really a threat? Was there really any type of comment? You could see facial expressions. There was even audio in different parts of the store that's recorded. They didn't pull any of that. They didn't pull any of that. One employee complains, the one with the retaliatory motive, California law under the Reeves decision, Ninth Circuit under Poland, attributes that retaliatory intent to the employer under respondeat superior that's been followed in California since 1936. This is not a new area of the law. The Peterman decision came down in 19, I believe, 59, the first public policy claim, and the Collier case that I cite to this court from 1991, as well as the Green case say that internal complaints of illegalities or unethical conduct support a public policy claim. I would submit to the court that trial court just weighed the evidence here and didn't apply an accurate summary judgment standard. If there are no other questions, I would submit on that. Thank you. Thank you very much. The case is started. It will be submitted.
judges: Rakoff, Reinhardt, Clifton